■ MARION DOLAN, as Administrator of the Estate of ROBERT VANDEMARK, Deceased, Appellant, v MATTHEW JAEGER et al., Defendants, and DARIUS NASIEK et al., Respondents. [727 NYS2d 784] —Crew III, J. Appeals (1) from an order of the Supreme Court (Torraca, J.), entered December 6, 1999 in Ulster County, which, inter alia, partially granted defendant Benedictine Hospital's motion for summary judgment dismissing the complaint against it, and (2) from a judgment of said court (Kavanagh, J.), entered April 13, 2000 in Ulster County, upon a verdict rendered in favor of certain defendants.

On February 9, 1997, decedent, as the result of activating a life line, was transported by ambulance to defendant Benedictine Hospital in the City of Kingston, Ulster County. Following admission to the hospital, in the early morning hours of February 10, 1997, decedent's heart rate escalated to 250 beats per minute and his blood pressure dropped to the point that it was not palpable. As a consequence, decedent was transferred to the intensive care unit and defendant Darius Nasiek, a Board-certified anesthesiologist, intubated him with an endotracheal tube and put him on a ventilator to assist his breathing. Nasiek also inserted a central line catheter in decedent's jugular vein in an effort to prevent his imminent death. Although the stan-

dard procedure when inserting a central line catheter calls for the removal of the accompanying guide wire, Nasiek inadvertently failed to do so due to the emergent nature of the situation and the need to stop on several occasions during the procedure to adjust decedent's intravenous medication. As the result of Nasiek's intervention, decedent's pulse and blood pressure eventually were stabilized and he survived.

On April 10, 1997, defendant Jonathan Ahmadjian, a radiologist, discovered the metal guide wire on an X ray of decedent's chest, which he removed in a 20-minute procedure under local anesthesia. Although numerous previous X rays had been taken of decedent, none of the defendant radiologists discovered the guide wire until that date. Nasiek admitted that he did not realize that he had left the guide wire inside decedent until Ahmadjian's discovery of same.

Decedent commenced this medical malpractice action in December 1997 and, in addition to Benedictine and Nasiek, decedent included as defendants the radiologists, David Hall, Susan Connors, Bruce Moore and Ahmadjian (hereinafter collectively referred to as the radiologist defendants), plus various other physicians and Hudson Valley Surgical Associates, P. C. Following joinder of issue and discovery, decedent discontinued his claims against all defendants except Benedictine, Nasiek and the radiologist defendants. Benedictine then moved for summary judgment, claiming that decedent had failed to establish a prima facie case of malpractice against it and, further, that it could not be held vicariously liable, as the individual defendant physicians were independent contractors. Supreme Court (Torraca, J.) partially granted Benedictine's motion, dismissing so much of the complaint as alleged that Benedictine was vicariously liable for the treatment rendered by the various physicians, and decedent appealed.

At trial, following the close of decedent's proof, Supreme Court (Kavanagh, J.) granted Benedictine's motion for a directed verdict. Thereafter, at the close of all the evidence, a jury returned a verdict in favor of the remaining defendants. Supreme Court subsequently denied decedent's motion for judgment notwithstanding the verdict or, in the alternative, for an order setting aside the verdict and directing a new trial. These appeals ensued.[1]

Initially, decedent contends that Supreme Court (Torraca,

---

1. Decedent died on April 16, 2001 while these appeals were pending, and we granted a motion to substitute Marion Dolan, decedent's administrator, as plaintiff. Nonetheless, for purposes of this decision, we will continue to refer to decedent as the named plaintiff.

J.) erred in granting Benedictine's motion for summary judgment on the issue of vicarious liability.[2] We disagree. In support of its motion for summary judgment, Benedictine proffered evidence that the physicians alleged to have committed malpractice were independent contractors not in its employ, thus demonstrating its prima facie entitlement to summary judgment. Decedent did not refute that evidence, nor did decedent submit evidence that Benedictine maintained control over the manner and means of said physicians' work (*see, Nagengast v Samaritan Hosp.*, 211 AD2d 878, 879) or that decedent reasonably believed that the physicians treating him were provided by Benedictine or acted on Benedictine's behalf (*see, Slavik v Parkway Hosp.*, 242 AD2d 376, 377). Accordingly, the court appropriately granted Benedictine's motion to dismiss so much of the complaint as alleged that it was vicariously liable for the treatment rendered by the various physicians who treated decedent.

Next, decedent argues that Supreme Court (Kavanagh, J.) erred in directing a verdict in favor of Benedictine at the close of decedent's proof. Again, we disagree. The theory of the case with regard to Benedictine's negligence was based upon the nursing staff's allegedly negligent completion of certain X-ray requisition slips. In that regard, decedent elicited the testimony of one Clifford Gevirtz, a Board-certified anesthesiologist, who opined that the failure of the nursing staff, when preparing the X-ray requisition slips, to advise that a central line procedure had been performed constituted a deviation from accepted standards of medical care. On cross-examination, however, Gevirtz testified that his opinion had to do with how he would prefer an X-ray requisition slip to be prepared, not whether the nurses in question deviated from accepted nursing practice. Indeed, Gevirtz conceded that he was not qualified to render such an opinion. Accordingly, as decedent failed to demonstrate that any of the nursing staff deviated from accepted practice, the court appropriately granted the motion for a directed verdict.

Alternatively, decedent argues that a directed verdict in favor of Benedictine was improper inasmuch as Benedictine could be deemed liable on a res ipsa loquitur theory of liability. A res ipsa loquitur charge permits a jury to infer negligence

---

**2.** Inasmuch as the right to take a direct appeal from an intermediate order terminates upon the entry of a final judgment, the appeal from the order granting partial summary judgment must be dismissed (*see, Pixel Intl. Network v State of New York*, 255 AD2d 666). We nonetheless will consider decedent's contentions as to the appropriateness of such decision, as the appeal from the final judgment brings the interlocutory order up for review (*see,* CPLR 5501 [a] [1]).

where the actual cause of the injury is unknown and ordinarily would not happen without negligence (*see*, *Kambat v St. Francis Hosp.*, 89 NY2d 489, 494). Here, the source of the guide wire was not unknown, inasmuch as Nasiek conceded that he inserted and inadvertently left it in decedent's chest. Accordingly, if there was a deviation from accepted standards, such deviation was Nasiek's, not Benedictine's.

Next, decedent asserts that Supreme Court (Kavanagh, J.) erred in giving an "error in judgment" charge. With regard to Nasiek, the record reflects that had he constantly remained at the insertion site while inserting the central line catheter, it is wholly unlikely that the retained guide wire would have been left in decedent's body. The record further reflects, however, that Nasiek had to stop the insertion process on several occasions to adjust decedent's intravenous medications in response to decedent's dangerously low blood pressure. The alternative was for Nasiek to remove the central line catheter on each occasion that he was required to attend to decedent's peripheral line. Such a removal entailed the risk of being unable to reestablish access to decedent's vein, which clearly would have been life threatening. As Nasiek was confronted with two alternatives requiring the exercise of his judgment—a point conceded by Gevirtz—the "error in judgment" charge was appropriate. Similarly, with regard to the radiologist defendants, there was conflicting trial evidence as to whether they failed to see the guide wire (but should have) or, alternatively, might have seen its resolution but did not realize what it was. There also was conflicting testimony regarding whether, if the subject resolution was unrelated to the purpose for which the attending physician had ordered the X ray, the decision not to refer to the resolution in a report was a matter of medical judgment. Accordingly, the "error in judgment" charge was appropriate regarding the radiologist defendants. We have considered decedent's remaining arguments and find them equally without merit.

Mercure, J. P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the appeal from the order is dismissed, without costs. Ordered that the judgment is affirmed, without costs.