2019 IL App (2d) 180391-U
No. 2-18-0391
Order filed October 22, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 15-CF-2148 |
| NICHOLAS J. REISING, | ) ) | Honorable Charles D. Johnson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*:   (1) Trial court did not err in granting defendant's motion for a directed verdict in hearing on State's petition to declare defendant a sexually dangerous person; the State had failed to present evidence that it was substantially probable that defendant would commit a contact sex offense in the future.  (2) The trial court retained jurisdiction to accept defendant's guilty plea after the State filed its notice of appeal challenging the sexually dangerous person ruling.

¶ 2     The State appeals from two orders of the trial court: (1) the May 17, 2018 order granting a directed verdict in favor of defendant, Nicholas J. Reising, on the State's petition to have defendant declared a sexually dangerous person; and (2) the May 18, 2018 order accepting

defendant's plea of guilty to one count of public indecency (720 ILCS 5/11-30 (West 2014) and sentencing defendant to time served in the Lake County jail. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was charged in August 2015 with one count of public indecency. The non-traffic complaint and notice to appear noted that defendant had committed at least two prior offenses of public indecency, thus making this offense, normally a Class A misdemeanor, a Class 4 felony. See 720 ILCS 5/11-30 (c) (West 2014). However, in September 2015, the State filed a one-count information charging the offense as a Class A misdemeanor. Defendant remained in custody throughout the proceedings.

¶ 5    On September 29, 2015, the State filed a motion to appoint qualified evaluators "to make a personal examination of Defendant in order to ascertain whether Defendant is sexually dangerous and then file with this Court a written report of the result of their examination." Defendant filed a response, requesting the court to deny the motion because it was premature pursuant to the Sexually Dangerous Persons Act (720 ILCS 205/0.01 *et seq.* (West 2014) (Act)) in that the court is not to appoint two psychiatrists to examine the defendant until after the State files a petition to declare the defendant sexually dangerous. On October 7, 2015, the State filed a petition to declare defendant a sexually dangerous person (SDP). The trial court denied defendant's motions to strike both petitions and ordered that the State could proceed on the petition to declare defendant a sexually dangerous person. The court also increased defendant's bond from $20,000 to $500,000.

¶ 6    The State subsequently filed an amended petition to declare defendant a sexually dangerous person and a new motion to appoint qualified evaluators pursuant to the Act. Defendant again moved to strike the amended petition. In August 2016, after dealing with

various motions, the trial appointed Steven Gaskell, Psy.D and Robert Brucker, Psy.D to interview and evaluate defendant and prepare written reports to be delivered directly to the court.

¶ 7 Jury selection for the SDP hearing was started and completed on May 15, 2018. On May 16, defense counsel told the trial court that, the night before, the State informed him that Dr. Gaskell had altered his opinion given in an October 2017 deposition that it would be substantially probable that defendant would commit a contact sexual offense in the future. According to the State, Gaskell "indicated that he was mistaken and overstated his opinion when asked about the likelihood of a contact offense." Further, the State filed a supplemental disclosure stating that Brucker, who had testified at his deposition that he would not be comfortable saying that it was substantially probable that defendant would commit a contact offense in the future, now found it "substantially probable that [defendant] will commit future contact sex offenses if not confined."

¶ 8 After extensive argument, the trial court ruled that Gaskell could testify about his original opinion and his newly disclosed opinion. However, the court granted defendant's oral motion to bar Brucker's testimony regarding his new, stronger opinion regarding future contact sex offenses.

¶ 9 After Gaskell and Brucker testified, defendant moved for a directed verdict, arguing that the State had failed to present evidence that it was substantially probable that defendant would commit a contact sex offense in the future. The trial court found:

> "[B]oth state's witnesses, when asked very pointedly by defense counsel on cross-examination, said they cannot find a substantial probability that the respondent will engage in the commission of sex offenses—as that term is apparently defined by *Bingham*—if not confined."

Taking the testimony in the light most favorable to the State, the court found "no evidence to support the allegations of the State's petition." Therefore, the court granted defendant's motion for a directed verdict and dismissed the petition on May 17.

¶ 10 Defense counsel immediately informed the court that, as defendant had been in custody for two-and-a-half years, he wished to withdraw his plea of not guilty and plead guilty to the underlying public indecency charge. The trial court stated that it was "[t]oo much for right now" and set the case for 9:00 the following morning for pretrial on the criminal case. After the court discharged the jury, the State notified the court of its "intent to seek leave to file an appeal." The State in fact filed its notice of appeal that afternoon.

¶ 11 The next morning, the trial court signed a written order memorializing its grant of a directed verdict and its dismissal of the Sexually Dangerous Person petition. The court then entertained extensive argument as to whether it retained jurisdiction to consider defendant's purported plan to plead guilty in light of the State's filing of its notice of appeal. The trial court explained that it had thought that defendant had been charged with a felony, based on the case number, but was now aware that the charge involved was a misdemeanor. Based on that misapprehension and the lateness of the hour after the hearing, the court had continued the matter for proceedings on defendant's plan to plead guilty.

¶ 12 The trial court concluded that, pursuant to *General Motors Corporation v. Pappas*, 242 Ill. 2d 163 (2011), a trial court retains jurisdiction after a notice of appeal is filed to determine matters collateral or incidental to the judgment appealed from. Further, while the Act requires the SDP petition and the underlying criminal case to "go together," they are not intertwined but are, in fact, separate. The court found it "impossible to believe that a—that the rules would require a criminal case to remain pending, particularly with a person in custody on a

misdemeanor for two years, while the appeal process goes through the process." Ultimately, the court found that it was "not barred from proceeding on the criminal case today and will, therefore, consider the defendant's desire to plead guilty to the charge and sentencing." Defendant then entered a blind plea of guilty, which the trial court accepted, and the court sentenced defendant to 364 days in the Lake County jail with credit for the 1001 days that he had already served.

## II. ANALYSIS

¶ 13    The State now raises two issues on appeal: (1) trial court erred in directing the jury's verdict in the SDP trial; and (2) the trial court erred in accepting defendant's guilty plea.

¶ 14    In granting a directed verdict, a trial court determines that, as a matter of law, "there are no evidentiary facts out of which the jury may construe the necessary fact essential to recovery." (Internal quotation marks omitted.) *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 112 (2004). A plaintiff must present at least some evidence on every essential element of the cause of action; failure to do so entitles the defendant to judgment in his or her favor as a matter of law. *Id*. at 123. A court may direct a verdict only where all of the evidence, construed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). Our review of an order disposing of a motion for directed verdict is *de novo*. *Id*.

¶ 15    To classify a defendant as a sexually dangerous person under the Act, the State must prove that the defendant has: (1) a mental disorder existing for at least one year prior to the filing of the petition; (2) criminal propensities to the commission of sex offenses; and (3) demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. 725 ILCS 205/1.01 (West 2014); *People v. Bingham*, 2014 IL 115964, ¶ 27. In addition, as to element (2)

above, a finding of sexual dangerousness premised upon the elements of section 1.01 of the Act must be accompanied by an explicit finding that it is "substantially probable" that the defendant will engage in the commission of sex offenses in the future if not confined. *People v. Masterson*, 207 Ill. 3d 305, 330 (2003). Here, the State challenges only the trial court's findings regarding the substantial probability that the defendant will engage in the commission of sex offenses in the future if not confined.

¶ 16 The Act does not define the term "sex offenses." In *Bingham*, the supreme court approved reliance on the definition of "sexual conduct" contained in section 12-12(e) of the Criminal Code of 1961 (720 ILCS 5/12-12(e) (West 2014) (Code)) for guidance as to the meaning of "sex offenses" under the Act. *Bingham*, 2014 IL 115964, ¶¶ 38-43. The Code defines "sexual conduct" as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused***for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12–12(e) (West 2014). Thus, the *Bingham* court concluded that "under the Criminal Code, the conduct must include the touching of a sex organ, anus, or breast." *Id*. ¶ 38.

¶ 17 In granting defendant's motion for directed verdict in the case before us, the trial court reluctantly applied *Bingham*, stating:

"I am telling you right now, at the risk of sanction by the Supreme Court, I don't agree with [*Bingham*], but it is the law. I am bound to follow the rulings of the Supreme Court. I have struggled mightily to find some way to differentiate the existing case from *Bingham*. I can't find a way. It says what it says.

Turning, then, to the testimony at trial, both state's witnesses, when asked very pointedly by defense counsel on cross-examination, said they cannot find a substantial

probability that the respondent will engage in the commission of sex offenses—as that term is apparently defined by Bingham—if not confined.

Therefore the—even taking the testimony in the light most favorable to the State, there is no evidence to support the allegations of the State's petition. The respondent's motion for directed finding [*sic*] at the close of the petitioner—plaintiff's case, whatever they are, is granted, and that petition is dismissed."

¶ 18 The State now argues that the trial court erred because the State presented a *prima facie* case by providing "some evidence" that defendant had a propensity to commit sex offenses. The State asserts that both Gaskell and Brucker testified on direct examination that defendant had the propensity to commit sex offenses. According to the State, "[w]hile the doctors also provided testimony that defendant was not substantially probable to commit a contact sexual offense, that discrepancy in the testimony would be for the jury to decide."

¶ 19 For example, the State asserts that Gaskell responded "Yes" when asked on direct examination, "Is it your opinion, Doctor, that the respondent is substantially probable to engage in the commission of sex offenses in the future if not confined?" However, Gaskell also agreed on direct examination that the tests that he relied upon in arriving at his opinion "don't distinguish between a contact and noncontact offense" and that, in forming his opinion, he utilized "a definition of sex offense that did not distinguish between sex offense—between contact offense and noncontact."

¶ 20 On cross-examination, Gaskell agreed that he had told the assistant State's Attorney the night before that he "cannot say that a contact offense is substantially probable." He had not done any research to determine the meaning of "sex offense" outside of reading the Act. When he testified on direct examination that defendant would commit a sex offense in the future if not

confined, he used the term "sex offense" to include contact offenses, noncontact offenses, and sexual molestation of children. If "sex offense" included only contact offenses, his opinion would be different. Gaskell then agreed that he could not say "with the requisite degree of psychological certainty" that it was substantially probable that defendant would commit a contact sex offense in the future if not confined.

¶ 21 Similarly, Brucker testified on direct examination that defendant "is substantially probable to commit future sex offenses." However, on cross-examination, he also agreed that, if the question in his analysis had been "is it substantially probable he's going to commit a contact sex offense in the future if not confined," his answer would have been that he "cannot say with [*sic*]—definitively that it is substantially probable he's going to commit a contact sex offense in the future if not confined."

¶ 22 Neither Gaskell nor Brucker actually opined that defendant was "substantially probable to engage in the commission of sex offenses in the future if not confined" because their opinions did not take into account the proper definition of the term "sex offenses." They stated opinions based on an improper definition that disregarded the law as stated by our supreme court. Further, both Gaskell and Brucker admitted that they used the wrong definition and testified that, if the proper definition were used, they could not say that it was substantially probable that defendant would commit a contact sex offense in the future if not confined. An opinion that is based on an improper standard and disregards the law, and is then admitted to be as such by the witness, is not evidence to be weighed against the witness's admission. There was no evidence of a substantial probability that defendant would engage in the commission of sex offenses in the future if not confined. The trial court did not err in directing the jury's verdict.

¶ 23    The State next contends that the trial court erred in accepting defendant's guilty plea. According to the State, once it filed its notice of appeal on May 17, the trial court lacked jurisdiction to accept the plea the following day, thus rendering the court's May 18 order void.

¶ 24    **A** void judgment may be challenged at any time, directly or collaterally, and such a challenge is not subject to forfeiture or other procedural restraints.  *People v. Price*, 2016 IL 118613, ¶ 30.   "[T]here is no fixed procedural mechanism or forum, nor is there any temporal limitation governing when a void *ab initio* challenge may be asserted."   *In re N.G.*, 2018 IL 121939, ¶ 57.   If such a challenge "is put in issue during a proceeding that is pending before a court, the court has an independent duty to vacate the void judgment and may do so *sua sponte*." *Id*.   This court has jurisdiction over the State's appeal regarding the SDP proceeding.   Thus, to the extent that the State contends that the trial court's actions of accepting defendant's guilty plea and imposing sentence are void, this court has jurisdiction to consider whether or not the actions are void.

¶ 25    The State argues that the trial court lost jurisdiction over the case when the State's May 17 notice of appeal became effective.   According to the State, the underlying criminal charges were "inseparably linked" to the SDP action such that, when the State appealed the verdict in the SDP proceedings, the trial court "lost jurisdiction over the case."   Thus, the State argues, the trial court's disposition of the underlying criminal charge was "accomplished without jurisdiction, thus rendering it void."

¶ 26    We note that, contrary to the State's argument, a notice of appeal divests a trial court of jurisdiction only over matters that are the subject of the appeal.   See *People v. Mitsakopolous*, 171 Ill. App. 3d 198, 202 (1988).   In *Mitsakopolous*, the defendant, charged with theft and forgery, successfully moved to dismiss the theft counts.   During the pendency of the State's

appeal of the dismissal, the State proceeded to trial on the forgery charges, and defendant was acquitted. *Id*. at 199. The appellate court reversed the order dismissing the theft counts and remanded for further proceedings. The defendant again moved for dismissal, arguing that the compulsory joinder statute (Ill. Rev. Stat. 1985, ch. 38, sec. 3-3, 3-4) precluded further prosecution, since all the charges against him should have been prosecuted in one proceeding. *Id*. at 200. The trial court granted the motion, ruling that, in the interest of judicial economy, the State should have suspended further proceedings in the trial court pending the outcome of the appeal. On appeal from the second order of dismissal, the State argued, *inter alia*, that its notice of appeal divested the trial court of jurisdiction and rendered the trial of the forgery charges a nullity. *Id*. at 201.

¶ 27 The appellate court noted that "once the notice of appeal is filed, the trial court only loses jurisdiction as regards those matters which are the subject of the appeal." *Id*. at 202. The initial appeal was taken only from the dismissal of the two theft counts such that "the trial court was not deprived of its jurisdiction and the State was not precluded from exercising its discretion and proceeding to trial on the remaining forgery counts." *Id*. "Since the trial court was vested with jurisdiction to proceed with a trial on the forgery counts, we do not find that the trial of the forgery charges was a nullity." *Id*.

¶ 28 Similarly, the trial court here still retained jurisdiction over the charge of public indecency and was not prohibited from accepting defendant's guilty plea and sentencing him. The charge of public indecency was not the subject of the appeal; the State's notice of appeal mentioned only the order granting defendant's motion for a directed verdict on the SDP petition. Thus, the trial court's acceptance of defendant's plea of guilty and its imposition of sentence was not void

¶ 29         III. CONCLUSION

¶ 30 For these, reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 31 Affirmed.