# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Drakeford v. University of Chicago Hospitals*, 2013 IL App (1st) 111366**

| | |
|---|---|
| Appellate Court Caption | ALEXANDRIA DRAKEFORD, Individually and as Special Administrator of the Estate of Valentina Nakia Dearring, Deceased, Plaintiff-Appellee and Cross-Appellant, v. UNIVERSITY OF CHICAGO HOSPITALS, Illinois Not-for-Profit Corporation, Defendant-Appellant and Cross-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1366 |
| Filed | June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the entry of a judgment for plaintiff in her action against defendant hospital arising from the death and unauthorized burial of her infant daughter, the trial court did not err in denying the hospital's motion for a judgment *n.o.v.* on the count alleging willful and wanton conduct in connection with the infant's burial, and there was no error in refusing to give a contributory negligence instruction, striking testimony as to whether plaintiff requested an autopsy, and limiting a hospital employee's testimony about the alteration of the infant's death certificate. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-L-3829; the Hon. Dennis J. Burke, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

William V. Johnson, David M. Macksey, Garrett L. Boehm, Jr., and Peter R. Ryndak, all of Johnson & Bell, Ltd., of Chicago, for appellant.

Michael W. Rathsack, of Chicago, for appellee.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion.
Presiding Justice Lampkin concurred in the judgment and opinion.
Justice Gordon dissented, with opinion.

## OPINION

¶ 1    This appeal arises from the death and alleged unauthorized burial of plaintiff Alexandria Drakeford's infant daughter, Valentina Nakia Dearring. Plaintiff gave birth to Valentina on March 8, 2003, at defendant University of Chicago Hospitals. Valentina was born with "Persistent Pulmonary Hypertension of the Newborn" (PPHN), a potentially fatal medical condition affecting infants and young children where blood vessels in the lungs constrict, reducing their capacity to deliver oxygen to the blood. Valentina died on April 10, 2003.

¶ 2    On April 6, 2005, plaintiff filed suit against defendant hospital and various medical personnel. Plaintiff originally alleged causes of action for wrongful death and survival based on medical negligence. Following a third amended complaint, the case went to the jury on medical negligence claims and on a count alleging willful and wanton interference with plaintiff's right to possession of her daughter's remains. In the willful and wanton count, plaintiff alleged the defendant hospital caused her daughter's remains to be buried in a mass, unmarked grave without her knowledge or consent and without performing a requested autopsy. The jury rejected the medical negligence claims but returned a verdict for plaintiff and against defendant hospital on the willful and wanton count, awarding her $4.6 million in damages.

¶ 3    The trial court granted defendant hospital's posttrial motion for a remittitur. The amount of damages was reduced to $3 million conditioned upon plaintiff's acceptance of the remittitur. Plaintiff accepted the remittitur and final judgment was entered in her favor on May 6, 2011. Defendant filed a timely notice of appeal. Plaintiff cross-appealed, challenging the remittitur. For the reasons that follow, we affirm.

¶ 4                           ANALYSIS

¶ 5    Defendant hospital raises a number of issues on appeal, none of which warrant reversal of the jury's verdict. We address each issue in turn. Defendant hospital first contends that its conduct in arranging a hospital burial for plaintiff's infant daughter did not rise to the level of willful and wanton conduct and therefore the trial court erred in denying its motion for a

judgment notwithstanding the verdict.

¶ 6 A decision on a motion for judgment notwithstanding the verdict is reviewed *de novo*. *Snelson v. Kamm*, 204 Ill. 2d 1, 42 (2003). Defendant hospital was entitled to a judgment notwithstanding the verdict only if it could show that the evidence, when considered in a light most favorable to plaintiff, so overwhelmingly favored the hospital that no verdict against it could ever stand. See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967) (a judgment notwithstanding the verdict is properly entered only in those limited cases where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand"). Our courts have recognized that this is a difficult standard to meet. *Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1125 (2000); *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 548 (2005). Defendant hospital did not meet the standard in this case.

¶ 7 "In ruling on a motion for a judgment notwithstanding the verdict, a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses ***." *Board of Trustees of Community College District No. 508, County of Cook v. Coopers & Lybrand*, 208 Ill. 2d 259, 274 (2003). It "is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony." *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992). In ruling on a motion for a judgment notwithstanding the verdict, an appellate court, like the trial court, must be careful not to " 'usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way.' " *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999) (quoting *Maple*, 151 Ill. 2d at 452-53). Judgment notwithstanding the verdict is not appropriate if "reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented." *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 351 (1995).

¶ 8 Defendant hospital claims the trial court erred in denying its motion for a judgment notwithstanding the verdict on the willful and wanton count, arguing the evidence was not sufficient to support a finding that the actions of its employee, Ms. Maybleine Griggers, was willful and wanton. Ms. Griggers was employed as an "expiration coordinator." She was "charged with the responsibility of managing all of the paperwork that was necessary if someone died in the hospital." She was required to make sure that all of the appropriate paperwork and documents were accurately prepared and preserved.

¶ 9 Plaintiff contends that Ms. Griggers' failure to follow mandatory hospital policies and procedures concerning the handling of deceased patients' remains caused her daughter's remains to be buried in a mass, unmarked grave without her knowledge or consent and without performing a requested autopsy. Plaintiff alleges these failures amounted to willful and wanton misconduct. She maintains that Ms. Griggers' misconduct made it impossible to give her daughter a proper burial and to have her daughter's remains buried in the family plot.

¶ 10 There is no separate and independent tort of willful and wanton misconduct. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274 (1994). Willful and wanton misconduct encompasses

-3-

a range of misconduct, covering the area between negligence and intentional wrongdoing, sharing many characteristics with acts of ordinary negligence. See *Pomaro v. Community Consolidated School District 21*, 278 Ill. App. 3d 266, 269 (1995) ("wilful and wanton conduct may lie anywhere between the parameters of intentional misconduct and mere negligence"); *Sparks v. Starks*, 367 Ill. App. 3d 834, 837 (2006) ("willful and wanton misconduct is essentially an aggravated form of negligence, regarded as a hybrid between conduct considered negligent and conduct considered intentionally tortious").

¶ 11    Whether certain conduct rises to the level of willful and wanton misconduct depends upon the facts of each case. *Giers v. Anten*, 68 Ill. App. 3d 535, 539 (1978); see *Ziarko*, 161 Ill. 2d at 275-76 ("[u]nder the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing"). The determination of this issue is generally a question of fact for the jury to decide. *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 123 (2010).

¶ 12    The conduct at issue in this case concerns alleged "reckless" willful and wanton misconduct. Reckless willful and wanton conduct is defined as a course of action that shows an utter indifference to or conscious disregard for the safety or property of others. *Pfister v. Shusta*, 167 Ill. 2d 417, 421-22 (1995). Reckless willful and wanton misconduct may be proven where there is a " 'failure, after knowledge of impending danger, to exercise ordinary care to prevent' the danger, or a 'failure to discover the danger through *** carelessness when it could have been discovered by the exercise of ordinary care.' " *Ziarko*, 161 Ill. 2d at 274 (quoting *Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, 583 (1946)).

¶ 13    In the instant case, the trial court instructed the jury on willful and wanton conduct as follows: "When I use the expression, quote, willful and wanton conduct, end quote, I mean a course of action which shows an utter indifference to or conscious disregard for the safety of others. It was the duty of the defendant University of Chicago Hospitals under the willful and wanton count of the complaint before and at the time of the occurrence to refrain from willful and wanton conduct which would endanger the plaintiff's right to possession of her daughter's remains."

¶ 14    At common law, there is no property right in a dead body. *In re Estate of Medlen*, 286 Ill. App. 3d 860, 864 (1997). However, the next of kin have a quasi-property right to possession of a decedent's remains in order to make appropriate disposition thereof. *Rekosh v. Parks*, 316 Ill. App. 3d 58, 68 (2000); *Leno v. St. Joseph Hospital*, 55 Ill. 2d 114, 117 (1973). "In Illinois, this right has been construed to give the next of kin the right to determine the time, manner, and the place of burial." *In re Estate of Medlen*, 286 Ill. App. 3d at 864. "To state a cause of action based on the right of the next of kin to possession and preservation of the body of a decedent, plaintiffs must demonstrate by specific facts that defendant's conduct was wilful and wanton." *Kelso v. Watson*, 204 Ill. App. 3d 727, 731 (1990).

¶ 15    Viewing the evidence in a light most favorable to plaintiff, as we must in considering defendant hospital's motion for judgment notwithstanding the verdict, we find there was sufficient evidence to support the jury's verdict on the willful and wanton misconduct count.

Conflicting evidence was presented on the primary issue of whether plaintiff consented to allow defendant hospital to handle the disposition of her daughter's remains. Plaintiff testified she never gave defendant hospital consent to release her daughter's remains or to dispose of the remains. In contrast, Ms. Griggers testified she made repeated telephone calls to plaintiff in the eight days following the infant's death and that the calls went unreturned until the eighth day, when plaintiff called and gave her consent for a hospital burial in a telephone call witnessed by Griggers' supervisor, Ms. Janice Hooper.

¶ 16    Griggers' testimony was impeached by the following evidence: mandatory hospital policy required written, signed consent from a decedent's next of kin before the hospital could properly release the decedent's remains for disposition; Griggers acknowledged she had no independent memory of the alleged telephone calls she made to plaintiff and her alleged worksheet documenting the various dates and times she claimed to have telephoned plaintiff were never produced at trial; Ms. Hooper, who allegedly witnessed the telephone call during which plaintiff gave her verbal consent, was deceased at the time of trial and was thus unavailable to corroborate Griggers' testimony; the only hospital document ("Authorization for Autopsy and Certificate of Removal") reflecting that Griggers obtained verbal consent from plaintiff to proceed with the hospital burial, indicated that the consent was obtained after the police had already removed the infant's body for transportation to the Cook County morgue; and finally, the infant's hospital chart was missing the "Consent for Release of Deceased" form, a hospital form that is signed by the next of kin authorizing the hospital to release the decedent's remains to a designated undertaker.

¶ 17    Given this impeaching evidence, the jury could have reasonably concluded that Ms. Griggers failed to exercise due care in implementing defendant hospital's mandatory procedures for handling a deceased patient's remains and proceeded to release the infant's remains without first obtaining plaintiff's written consent to do so and that such failure amounted to willful and wanton misconduct evidencing a conscious disregard for or indifference to plaintiff's right to possession of her deceased daughter's remains. Under certain circumstances, a person can be guilty of willful and wanton conduct not only through an error in judgment but also from a failure to exercise judgment. *Spence v. Commonwealth Edison Co.*, 34 Ill. App. 3d 1059, 1067 (1975).

¶ 18    After considering all of the evidence in a light most favorable to plaintiff, we cannot find that it so overwhelmingly favored defendant hospital that no jury verdict based on that evidence could ever stand. See *Pedrick*, 37 Ill. 2d at 510. The trial court did not err in denying defendant hospital's motion for a judgment notwithstanding the verdict.

¶ 19    Defendant hospital next contends the trial court erred in denying its motion to dismiss plaintiff's willful and wanton count pursuant to section 2-619(a)(5) of the Illinois Code of Civil Procedure (Code), which provides that a defendant is entitled to a dismissal if "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2008). We review a trial court's denial of a section 2-619 motion under a *de novo* standard of review. *Polites v. U.S. Bank National Ass'n*, 361 Ill. App. 3d 76, 80 (2005).

¶ 20    Defendant hospital asserts that plaintiff's willful and wanton claim was time barred by the five-year statute of limitations period set forth in section 13-205 of the Code, which

provides that "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2008). Under the "discovery rule," a statute of limitations starts to run "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414-15 (1981).

¶ 21    The key fact to be determined here is when plaintiff knew or reasonably should have known of the alleged improper burial. Defendant hospital maintains it released the infant's body to the county morgue for burial on April 18, 2003. Defendant hospital argues the five-year statute of limitations began to run no later than sometime in early June 2003, when plaintiff spoke to an individual in the hospital's expiration department and was informed that no autopsy had been performed on her daughter's body. Defendant hospital contends that at that point, plaintiff knew or reasonably should have known of the alleged improper burial and therefore the statute of limitations expired before plaintiff alleged a willful and wanton misconduct claim on July 9, 2008. We must disagree.

¶ 22    Review of the record indicates plaintiff went to the hospital sometime in July or August 2003, to obtain an autopsy report and was instructed to obtain a death certificate. Plaintiff believed her daughter's body was still at the hospital's morgue. When plaintiff obtained the death certificate, she discovered her daughter's remains had been taken to Homewood Memorial Gardens Cemetery for burial. The record indicates plaintiff had no knowledge of the alleged improper burial until she obtained her daughter's death certificate sometime in July or August 2003. Therefore, evidence plaintiff was informed no autopsy had been performed on her daughter's body does not support a finding, as a matter of law, that she knew or reasonably should have known the hospital had released the infant's remains for burial.

¶ 23    Defendant hospital next contends the trial court erred by refusing to give a contributory negligence instruction. Defendant hospital sought to prove that plaintiff was contributorily negligent by failing to arrange for the infant's burial. Defendant hospital maintains plaintiff "had a duty to provide for the proper disposition of the infant's remains, either by arranging for a hospital burial or by taking possession and control of the remains herself." The trial court refused to instruct the jury on contributory negligence, finding that plaintiff had no duty in this regard. We agree with the trial court.

¶ 24    "A jury instruction is justified if it is supported by some evidence in the record, and the trial court has discretion in deciding which issues are raised by the evidence." *Clarke v. Medley Moving & Storage, Inc.*, 381 Ill. App. 3d 82, 91 (2008). "Contributory negligence is defined as a lack of due care for one's own safety as measured by an objective reasonable person standard." *McCarthy v. Kunicki*, 355 Ill. App. 3d 957, 972 (2005). "Instructions regarding plaintiff's contributory negligence are not proper where there is no testimony or other evidence from which a finding of contributory negligence might be made." *Id*. In this case, there was no evidence warranting the submission of a contributory negligence instruction to the jury.

¶ 25    Defendant hospital cites the case of *Mesinger v. O'Hara*, 189 Ill. App. 48, 53-54 (1914), for the proposition that a decedent's next of kin has a duty to take possession of the

decedent's body for the purpose of giving it a decent burial. However, the court's statement regarding such a duty was *dicta*, made in the context of the court's recitation of the history of an action for interference with the right to dispose of a decedent's body. See *Mesinger*, 189 Ill. App. at 53-54 ("The decided weight of authority in this country supports the proposition that while a dead body is not considered as property, in the ordinary, technical sense in which that word is usually employed, yet the law does recognize a right, *** arising out of the duty of the nearest relatives of the deceased to bury their dead, which authorizes and requires them to take possession and control of the dead body for the purpose of giving it a decent burial.").

¶ 26 Moreover, even if plaintiff had a duty to take possession of her daughter's body for burial, such a duty was irrelevant to a determination as to whether she was contributorily negligent. The primary issue on appeal is whether defendant hospital disposed of the infant's remains without obtaining plaintiff's consent. If plaintiff never gave such consent, then she could not have violated such a duty. On the other hand, if defendant hospital is correct, and plaintiff consented to the hospital burial, then plaintiff fulfilled her duty. Neither scenario indicates negligence on plaintiff's part.

¶ 27 Defendant hospital next contends the trial court erred in striking Dr. William Meadow's testimony as to whether plaintiff requested an autopsy. The doctor was one of the infant's last attending physicians. Dr. Meadow, who testified on behalf of defendant hospital, was asked on direct examination whether plaintiff requested an autopsy. The doctor responded that he did not "have any specific recollection outside of the chart, but in the chart there's no record that she did and I don't believe she did."

¶ 28 Defense counsel then asked Dr. Meadow what the procedure would have been if plaintiff had requested an autopsy. When the doctor began explaining the hospital's customary practice regarding requests for autopsies, plaintiff's counsel objected on the ground that no such testimony had been disclosed in accordance with Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007). At his deposition, the doctor had only been asked about expirations, not autopsies.

¶ 29 A side-bar discussion followed outside the presence of the jury. Plaintiff's counsel explained to the trial court that in his Rule 213 disclosure and discovery deposition, Dr. Meadow never mentioned anything about autopsies. The trial court read out loud a portion of Dr. Meadow's deposition wherein the doctor stated, "I was not the primary attending for the baby either in the month of March or April. As you can see from the record, my encounter of the baby was infrequent." The trial court then told defense counsel, "[y]ou can ask him about expiration, but there's nothing there." Defense counsel responded, "well, if that's not enough to get into the autopsy, then I won't go into it." The trial court sustained plaintiff's Rule 213 objection, stating, "[t]hen I'm going to sustain the objection because there's nothing at all that I can see here with respect to autopsy." The trial court struck the doctor's testimony concerning autopsies.

¶ 30 The admission of evidence pursuant to Supreme Court Rule 213 is within the trial court's discretion, and the court's ruling will not be disturbed absent an abuse of that discretion. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004). An abuse of discretion occurs when

the court's ruling is arbitrary, fanciful or unreasonable, or where no reasonable person would adopt the court's view. *TruServ Corp. v. Ernst & Young, LLP*, 376 Ill. App. 3d 218, 227 (2007).

¶ 31 Illinois Supreme Court rules concerning discovery are mandatory and strict compliance is required. *Sullivan*, 209 Ill. 2d at 109. Rule 213(f)(3) requires parties to furnish, among other things, the subject matter, conclusions and opinions of controlled expert witnesses who will testify at trial. Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2007); *Lopez v. Northwestern Memorial Hospital*, 375 Ill. App. 3d 637, 645 (2007). Rule 213(g) limits expert opinions at trial to "information disclosed in answer to a Rule 213(f) interrogatory, or in a discovery deposition." Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2007). "Rule 213 is designed to give those involved in the trial process a degree of certainty and predictability that furthers the administration of justice and eliminates trial by ambush." (Internal quotation marks omitted.) *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 381 (2003).

¶ 32 Defendant hospital first suggests that performing an autopsy is included within the definition of care and treatment rendered by Dr. Meadow and therefore the trial court erred in striking the doctor's testimony concerning autopsies. We must disagree. The trial court was well within its discretion when it determined that the performance of an autopsy by a physician other than Dr. Meadow was not a part of the care and treatment the doctor rendered to plaintiff's infant daughter.

¶ 33 Defendant hospital next contends that Dr. Meadow should have been allowed to testify regarding his customary practice of advising parents of the availability of an autopsy and should have been allowed to testify that the infant's medical chart did not contain a request for an autopsy. Defendant hospital maintains that the doctor's proposed testimony was not "opinion" testimony subject to Supreme Court Rule 213, but was rather testimony about facts based on the doctor's personal knowledge and involvement in the events following the infant's death. Again, we must disagree.

¶ 34 The doctor's proposed testimony would have constituted speculative opinion testimony. Defendant hospital appears to assume that testimony regarding custom and practice is composed primarily of factual testimony. "[C]ustom and practice may be established by opinion testimony of a person with personal knowledge or by introduction of specific instances of conduct sufficient in number to support a finding of routine practice." *Sanders v. City of Chicago*, 306 Ill. App. 3d 356, 366 (1999). "Opinion testimony concerns what a witness thinks, believes, or infers in regard to facts in dispute, as distinguished from his personal knowledge of the facts themselves." (Internal quotation marks omitted.) *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 577 (2001).

¶ 35 Here, Dr. Meadow acknowledged he had no independent recollection of plaintiff's case and he had no personal knowledge as to whether she ever requested an autopsy of her daughter's body. For the doctor to infer that no autopsy was requested because there was no charting entry is opinion, and his inference that no autopsy was requested because in practice, if it was, it would have been charted constitutes an opinion as well.

¶ 36 Defendant hospital next argues the trial court erred and should have allowed Dr. Meadow to testify that plaintiff failed to request an autopsy since plaintiff was allowed to testify she

made such a request. This argument is meritless. The record shows that plaintiff disclosed in her deposition that she requested an autopsy, so there was no Rule 213 issue. The hospital did not disclose as to Dr. Meadow, so Rule 213 applied. One outcome is not tied to the other. The question is which party complied with Rule 213.

¶ 37    Defendant hospital next contends that plaintiff should not have been allowed to testify that she requested an autopsy, because she did not provide sufficient details about the request. Defendant hospital's motion *in limine* No. 9 sought to bar plaintiff from testifying that she requested an autopsy.

¶ 38    "A motion *in limine* is addressed to the trial court's inherent power to admit or exclude evidence." *Beehn v. Eppard*, 321 Ill. App. 3d 677, 680 (2001). "[A] denial of a motion *in limine* does not preserve an objection to disputed evidence later introduced at trial." *Brown v. Baker*, 284 Ill. App. 3d 401, 406 (1996). "When a motion *in limine* is denied, a contemporaneous objection to the evidence at the time it is offered is required to preserve the issue for review." *Id.* "Absent the requisite objection, the right to raise the issue on appeal is waived." *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502 (1994).

¶ 39    In this case, the only objection during plaintiff's direct examination on this point was to leading, and the question was rephrased without further objection. The issue was also waived because defense counsel elicited similar testimony from plaintiff on cross-examination.

¶ 40    Defendant hospital next argues the trial court erred in giving a jury instruction on institutional negligence (Illinois Pattern Jury Instructions, Civil, No. 105.03.01 (2000) (hereinafter IPI Civil (2000) No. 105.03.01)). A "trial court has discretion to determine which instructions to give the jury and that determination will not be disturbed absent an abuse of that discretion." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002). "A reviewing court will not reverse a cause on the basis of an improper jury instruction unless, considering the instructions as a whole, the alleged improper instruction clearly mislead the jury." *Decker v. St. Mary's Hospital*, 249 Ill. App. 3d 802, 821 (1993).

¶ 41    Defendant hospital contends the institutional negligence instruction confused the jury during its deliberations by allowing jurors to consider institutional negligence in deciding the disposition-of-remains claim. Our review of the record convinces us there is no reasonable probability the jury was confused by the institutional negligence instruction.

¶ 42    The jury was instructed that there were two separate claims, with two separate burdens of proof. The jury was also given a definition of willful and wanton. In addition, during closing argument, plaintiff's counsel made clear there were two claims, with two different burdens of proof, and that the disposition-of-remains claim required proof of willful conduct. In fact, during closing argument, one of plaintiff's counsels transitioned from the medical negligence claim to the disposition-of-remains claim by alerting the jury that co-counsel would address them on the willful and wanton part of the case. Counsel then repeatedly reminded the jury that this was a willful and wanton claim, separate and distinct from the negligence claim. Viewing the instructions as a whole and the argument on those instructions, we cannot say that the instruction in question misled the jury.

-9-

¶ 43    Defendant hospital next contends the trial court erred in giving a missing evidence instruction (Illinois Pattern Jury Instructions, Civil, No. 5.01 (2006) (hereinafter IPI Civil (2006) No. 5.01)). This instruction allows the jury to infer that any evidence not offered, but within the control of a party, is adverse to that party. *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 210 (2007). An IPI Civil (2006) No. 5.01 instruction is warranted only if there is no reasonable excuse for failure to produce the evidence. *Ahmed v. Pickwick Place Owners' Ass'n*, 385 Ill. App. 3d 874, 893 (2008).

¶ 44    Plaintiff requested the trial court to instruct the jury as to missing documents that should have been included in the infant's medical chart, such as various expiration documents and Ms. Griggers' handwritten notes, which she testified she had made documenting her telephone calls to plaintiff. Defendant hospital maintains the trial court erred in giving this instruction because it had a reasonable explanation as to why Ms. Griggers' handwritten notes were not available, namely, nothing in its rules required her to make or retain notes of her telephone conversations. This argument does not help defendant hospital. The missing evidence instruction does not require as a predicate for its use that some rule require that the missing evidence be maintained.

¶ 45    Ms. Griggers and the hospital failed to explain why the handwritten notes could not be located and that was one of the bases for the instruction. In addition to the handwritten notes, there were other documents missing from the infant's medical chart and no explanations were given as to why they were not produced at trial. The trial court did not err in giving the missing evidence instruction.

¶ 46    Defendant hospital next contends the trial court erred by limiting the testimony of Ms. Griggers as to her explanation of why the infant's death certificate was altered to indicate no autopsy had been requested. The death certificate contains a checkbox which can be marked to indicate a request for an autopsy. The checkbox on the final, white copy of the infant's death certificate was marked "yes." The checkbox on the yellow worksheet for the infant was initially checked "yes," to indicate an autopsy had been requested, but the "yes" was scratched out by hand, and "no" was marked over "yes" to reflect that no autopsy was requested. Ms. Griggers gave conflicting testimony as to whether she believed she made the handwritten changes and scratch outs.

¶ 47    When defense counsel asked Ms. Griggers to explain the discrepancy between the two documents, plaintiff's counsel objected on the ground that Griggers previously testified she had no independent recollection of who made the handwritten changes. The objection was sustained and a sidebar discussion followed outside the presence of the jury.

¶ 48    During the sidebar, defense counsel argued that Ms. Griggers should be allowed to testify that the discrepancies between the two documents were attributable to a mistake. Plaintiff's counsel disagreed and argued that the discrepancies were not necessarily the result of a mistake, but that the worksheet could have been purposely altered to reflect that no autopsy was requested. Plaintiff's counsel also pointed out that Griggers had testified that she had no independent recollection of who made the handwritten changes. The trial court sided with plaintiff's counsel and ruled that Ms. Griggers would not be allowed to testify that the discrepancies between the two documents was attributable to a mistake. However, the trial

court ruled that defense counsel could make such an argument.

¶ 49      In regard to this issue, defendant hospital fails to explain how a witness who admits she has no independent recollection of a particular event is in a position to explain something about the event. We find the trial court properly limited Ms. Griggers' testimony.

¶ 50      Defendant hospital next contends plaintiff's counsel made improper and prejudicial arguments during closing. The purpose of closing argument is to draw reasonable inferences from the evidence and to assist the jury in fairly arriving at a verdict based on the law and evidence. *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932, 948 (2000). As a result, counsel is afforded wide latitude during closing argument and may comment and argue on the evidence and any reasonable inferences that may be fairly drawn from the evidence. *Clarke v. Medley Moving & Storage, Inc.*, 381 Ill. App. 3d 82, 95 (2008). "The scope of closing argument is within the sound discretion of the trial court and the reviewing court will reverse only if the argument is prejudicial." (Internal quotation marks omitted.) *O'Neil v. Continental Bank, N.A.*, 278 Ill. App. 3d 327, 340 (1996).

¶ 51      In his closing argument, plaintiff's counsel argued that Ms. Griggers failed to follow mandatory hospital protocol concerning the handling of deceased patients' remains and that this failure caused plaintiff's infant daughter to be buried without her consent and without performing a requested autopsy. Counsel suggested an autopsy might have revealed the infant was not suffering from an idiopathic or preexisting condition.

¶ 52      Defendant hospital complains that plaintiff's counsel's closing argument confused the jury and allowed jurors to consider the hospital's alleged negligence in deciding the disposition of remains claim. We disagree, essentially for the same reasons we rejected defendant hospital's contentions regarding the institutional negligence jury instruction. Defendant hospital was not prejudiced by this closing argument since there is no indication in the record that the jury was confused by the evidence.

¶ 53      Defendant hospital also takes issue with the portion of plaintiff's counsel's closing argument where he suggested that the documents missing from the infant's medical chart would have established that plaintiff requested an autopsy and she never gave the hospital consent to remove her daughter's remains. Defendant hospital maintains the closing argument improperly raised the specter of a conspiracy. We disagree.

¶ 54      In closing argument, counsel may draw inferences from the evidence. *Rockwood v. Singh*, 258 Ill. App. 3d 555, 558 (1993). Plaintiff's counsel's closing remarks about the missing documents were proper because the remarks were based on permissible inferences from the evidence presented at trial. In this case, the jury was allowed to draw adverse inferences from the fact that certain hospital documents and alleged handwritten notes were missing from the infant's medical chart.

¶ 55      Defendant hospital next contends the trial court erred in failing to grant its motion for a new trial on damages. The decision to grant a new trial solely on the issue of damages is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Vacala v. Village of LaGrange Park*, 260 Ill. App. 3d 599, 616 (1994). "A jury's award of damages will not be overturned unless it is against the manifest weight of the evidence." *Napcor Corp. v. JP Morgan Chase Bank, NA*, 406 Ill. App. 3d 146, 157 (2010). A verdict

is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 452-53 (1992).

¶ 56    Our courts have repeatedly held that the amount of damages to be assessed is peculiarly a question of fact for the jury to determine and that great weight must be given to the jury's decision. *Snelson v. Kamm*, 204 Ill. 2d 1, 36-37 (2003). "[I]n the context of a damages award, we will not upset a jury's verdict unless: (1) the jury ignored a proven element of damages; (2) the verdict resulted from passion or prejudice; or (3) the award bore no reasonable relationship to the loss." *Rodriguez v. Northeast Illinois Regional Commuter R.R. Corp.*, 2012 IL App (1st) 102953, ¶ 55.

¶ 57    Defendant hospital first argues the jury's damage award was not supported by the evidence because the plaintiff's alleged emotional distress was uncorroborated since she "did not reference any physical or emotional injuries that required even a single visit to a healthcare provider or counselor." We disagree. Plaintiff testified she was horrified and depressed after visiting the cemetery and sought care for depression. Moreover, the absence of medical treatment does not preclude recovery for emotional distress. See *Von Seggren v. Smith*, 151 Ill. App. 3d 813, 816 (1987) (although plaintiff consulted with her pastor, she never saw a doctor, psychiatrist, psychologist, or counselor concerning her mental distress over the handling of her mother's cremated remains).

¶ 58    Evidence was presented that plaintiff visited her infant daughter in the neonatal intensive care unit all 33 days the infant was alive. This was plaintiff's first child. Plaintiff testified that her daughter's death affected her in ways she could not fully describe and stated, "I never knew I could hurt this bad." Plaintiff sought help for depression. Plaintiff testified that her daughter's remains were subsequently buried in a mass, unmarked grave without her knowledge or consent and without a requested autopsy.

¶ 59    Michael McReynolds of the Cook County medical examiner's office testified that the infant's body was brought to the medical examiner's office on April 18, 2003, and remained there until May 2, 2003, inside a fetal storage box along with fetuses, other babies, and amputated limbs. None of the bodies or remains were embalmed and they decomposed at a fast rate because they were piled in box. The fetal storage box containing the remains of plaintiff's infant daughter was buried in a mass grave. In response to the question as to whether he was ever asked to unseal one of the fetal storage boxes, McReynolds responded "yes," but added, "It's–it's pretty grim. They decompose. There is a liquid. There is a smell. It's–I can't imagine anyone recognizing an individual out of it, out of a package like that."

¶ 60    Plaintiff stated the area of the cemetery she visited smelled like a slaughter house, with the "worst horrid smell," and she was horrified. Plaintiff testified the hospital's actions made it impossible to give her daughter a proper burial and to have her daughter's remains buried in the family plot. Considering plaintiff's testimony with the facts of the case and the jurors' personal experiences, we believe the jury could reasonably find that the circumstances of this case caused plaintiff emotional distress. *Thornton v. Garcini*, 237 Ill. 2d 100, 109 (2009).

¶ 61    Defendant hospital further contends that the evidence of plaintiff's emotional distress was limited and did not warrant the amount of damages awarded because she did not

sufficiently articulate her emotional distress or describe in detail the emotional trauma she allegedly suffered. This argument is meritless. The fact that a plaintiff testifies only briefly about an emotional injury does not necessarily lessen the severity of the injury. *Reinneck v. Taco Bell Corp.*, 297 Ill. App. 3d 211, 218-19 (1998).

¶ 62    Defendant hospital urges us to compare damage awards handed down in other cases as a means of determining whether the jury's damage award in this case was excessive. We note that courts in Illinois have traditionally declined to compare damages awarded in one case to damages awarded in other cases in determining whether a particular award is excessive. *Richardson v. Chapman*, 175 Ill. 2d 98, 114 (1997). We decline to do so here.

¶ 63    Considering all the evidence, we cannot say the jury's damage award was against the manifest weight of the evidence. The trial court did not abuse its discretion by declining to grant a new trial on the issue of damages.

¶ 64    Alternatively, defendant hospital argues the trial court erred in refusing to order a greater remittitur. On cross-appeal, plaintiff maintains the trial court abused its discretion in ordering the remittitur in the first place.

¶ 65    As mentioned, our courts have consistently held that the amount of damages to be assessed is peculiarly a question of fact for the jury to determine and that great weight must be given to the jury's decision. See *Snelson*, 204 Ill. 2d at 36-37. However, the deference given to the deliberative process of the jury is overcome if, after examining the evidence presented at trial, the trial court determines the jury verdict is excessive. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 412 (1997). "Under such circumstances the trial court has a duty to correct the excessive verdict, and may do so by ordering a remittitur of a portion of the damages, with the plaintiff's consent." *Id.* at 413.

¶ 66    "A remittitur is an agreement by the plaintiff to relinquish, or remit, to the defendant that portion of the jury's verdict which constitutes excessive damages and to accept the sum which has been judicially determined to be properly recoverable damages." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 253 (2006). "The purpose of a remittitur is to correct excessive jury verdicts in limited and appropriate circumstances." *Clarke*, 381 Ill. App. 3d at 96. A plaintiff's consent to a remittitur is not necessarily a concession that the damages were excessive. *Haid v. Tingle*, 219 Ill. App. 3d 406, 411 (1991). The issue as to whether a remittitur should be ordered is determined on a case-by-case basis, because the evidence and circumstances supporting verdicts must be carefully examined before a jury's assessment of damages is reduced. *Best*, 179 Ill. 2d at 413.

¶ 67    A remittitur should be ordered only when a jury's award falls outside the range of fair and reasonable compensation, appears to result from passion or prejudice, or is so large that it shocks the judicial conscience. *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 67. A jury's award will not be subject to remittitur where it falls within the flexible range of conclusions which can be reasonably supported by the facts, since the assessment of damages is primarily an issue of fact for jury determination. *Best*, 179 Ill. 2d at 412.

¶ 68    In this case, the jury returned a verdict in favor of plaintiff in the amount of $4.6 million. The trial court determined the award fell outside the limits of reasonable compensation and ordered a remittitur of $1.6 million, reducing the judgment to $3 million, which the plaintiff

-13-

accepted. The standard of review regarding a trial court's ruling on a motion for remittitur is abuse of discretion. *In re Estate of Oglesby*, 408 Ill. App. 3d 655, 661 (2011). An abuse of discretion occurs when a trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Patton v. Lee*, 406 Ill. App. 3d 195, 199 (2010). " 'In determining whether there has been an abuse of discretion, we may not substitute our judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely.' " *Clarke*, 381 Ill. App. 3d at 95 (quoting *Simmons v. Garces*, 198 Ill. 2d 541, 568 (2002)).

¶ 69     We do not believe the trial court abused its discretion either in ordering a remittitur, or in the amount of the remittitur ordered. The fact that the trial court ordered a remittitur did not establish that the verdict was the result of passion and prejudice by the jury (*Jensen v. Richardson*, 93 Ill. App. 2d 237, 241 (1968)), or was so large that it shocked the judicial conscience. The trial court, having heard and observed the witnesses, as well as the jury's reactions, was in a far superior position than this court to judge the severity of the plaintiff's emotional distress and make an informed decision regarding a remittitur. Under the facts and circumstances presented to us, we decline to interfere with the amount of the judgment as ordered by the trial court on remittitur.

¶ 70     For the foregoing reasons, we affirm the judgments of the circuit court of Cook County.

¶ 71     Affirmed.

¶ 72     JUSTICE GORDON, dissenting.

¶ 73     I must respectfully dissent on one issue and one issue only. The trial court may have erred in striking Dr. Meadow's testimony that Valentina's hospital chart contained no record of a request for an autopsy. The trial court struck the entire line of questioning because Dr. Meadow was not asked about an autopsy at his deposition. Dr. Meadow was a treating physician and his answers to Rule 213 interrogations disclosed that Dr. Meadow would be testifying regarding his care and treatment of the infant, as set forth in the medical records and his deposition. The trial court found that defendants violated Rule 213 by not disclosing that Dr. Meadow would testify to the hospital's custom and practice concerning autopsies.

¶ 74     "The admission of evidence pursuant to Rule 213 is within the sound discretion of the trial court and the court's ruling will not be disturbed absent an abuse of discretion." *Zickuhr v. Ericsson, Inc.*, 2011 IL App (1st) 103430, ¶ 79 (citing *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004)). "An abuse of discretion occurs when no reasonable person would take the view adopted by the court." *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002) (citing *In re Marriage of Blunda*, 299 Ill. App. 3d 855, 865 (1998)). "Rule 213 disclosure requirements are mandatory and subject to strict compliance by the parties." *Zickuhr*, 2011 IL App (1st) 103430, ¶ 79 (citing *Sullivan*, 209 Ill. 2d at 109).

¶ 75     "However, the failure to comply with Rule 213 does not automatically require the exclusion of the noncomplying party's witnesses or testimony." *Zickuhr*, 2011 IL App (1st) 103430, ¶ 80.

"Our supreme court has held that in determining whether the exclusion of a witness or testimony is a proper sanction for nondisclosure, the court 'must consider' the following factors: (1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness." *Zickuhr*, 2011 IL App (1st) 103430, ¶ 80 (citing *Sullivan*, 209 Ill. 2d at 110).

¶ 76    If the trial court utilized the six *Sullivan* factors, there is nothing in the record that discusses those factors. In order to strike or bar this information, the trial court was required to utilize those factors. *Sullivan*, 209 Ill. 2d at 110. As a result, I would remand this case back to the circuit court of Cook County to explain how this information can be barred under the *Sullivan* factors. There is nothing in the record that provides this court with the information to determine whether the trial court utilized those factors or not. If the information that this witness was going to offer should have been admitted, then I believe defendants were prejudiced and should receive a new trial.