NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2016[*]
Decided June 1, 2016

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-1539

| | |
|---|---|
| OMAR RAMIREZ,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 12-cv-01197-MJR-SCW |
| MAGID FAHIM and WEXFORD<br>HEALTH SERVICES, INC.,<br>    *Defendants-Appellees*. | Michael J. Reagan,<br>*Chief Judge*. |

**O R D E R**

Omar Ramirez, an Illinois prisoner at Menard Correctional Center, alleged that Dr. Magid Fahim and Wexford Health Services had denied appropriate treatment for an injury to his left knee despite numerous complaints that the knee joint would dislocate, causing pain. He claimed that the course of treatment constituted deliberate indifference to a serious medical need under the Eighth Amendment, *see* 42 U.S.C. § 1983, and medical malpractice under Illinois law, *see Sullivan v. Edward Hosp.*,

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

806 N.E.2d 645, 653 (Ill. 2004). Three times Ramirez asked the district court to recruit a lawyer to assist him, but the court denied each request. The court also dismissed the malpractice claim because Ramirez had not submitted a physician's certification of "reasonable and meritorious cause" for that claim. *See* 735 ILCS 5/2-622(a). The defendants later prevailed at summary judgment on the Eighth Amendment claim, but in this appeal Ramirez challenges only the district court's refusal to recruit counsel and the dismissal of the malpractice claim. We affirm the judgment.

In his 2012 complaint Ramirez alleged that he had injured his left knee playing basketball at a different prison in 2004. He was treated with ice, ibuprofen and bed rest, he said, but over time the knee joint worsened and began dislocating when he descended stairs. After transferring to Menard, Ramirez continued, he was seen by Dr. Fahim during 2009 and 2010 but never referred to an orthopedic specialist or scheduled for an MRI to evaluate his knee condition. Two X-rays had shown only mild osteoarthritis but, according to Ramirez, X-rays were not enough. A Wexford policy of denying care to save money, Ramirez asserted, had caused Dr. Fahim's inadequate treatment. Ramirez attached to his complaint medical records relating to his knee and submitted a request for help in obtaining counsel.

At screening, *see* 28 U.S.C. § 1915A, the district court allowed the Eighth Amendment claim to proceed but told Ramirez that state-mandated documentation was needed before his malpractice claim could go forward. Under Illinois law, the court explained, Ramirez was required to submit an affidavit from a physician certifying the existence of grounds for the malpractice claim. The court gave Ramirez 60 days to obtain the certification and warned that the malpractice claim would be dismissed without prejudice unless certification was supplied.

Ramirez reacted to the screening order by reminding the district court of his (still unresolved) request for counsel. Obtaining a physician's certification without a lawyer, Ramirez asserted, would be "near impossible" because, as a prisoner, he could not afford the fee a doctor likely would charge to evaluate his medical records. He already had sent his records to a few doctors, Ramirez explained, but had not received a response.

The district court declined to recruit counsel with the explanation that Ramirez appeared able to litigate the suit himself. The court noted that Ramirez's submissions were clearly written and easy to understand, and opined that the lawsuit was not complicated. The court added that Ramirez's imprisonment was not reason enough to recruit counsel, lest every inmate wanting to pursue a claim for medical malpractice

under Illinois law would be entitled to a lawyer's help in getting a physician's certification. The district court gave Ramirez an extra 30 days to submit the certification and warned him again that the malpractice claim would be dismissed without it. A month after this extended deadline, Ramirez still had not tendered the certification, prompting the court to dismiss the claim without prejudice.

After this, Ramirez shifted his attention to the Eighth Amendment claim, and again he asked the district court to recruit counsel. In his motion (and a supplement) Ramirez asserted that his lawsuit would involve "substantial investigation and discovery." He protested that he lacked legal training and was reliant on other inmates for assistance, and he further asserted that he could not conduct discovery or procure the required physician's certification. The court was unpersuaded by this dim self-appraisal, noting that Ramirez already had won a motion to compel discovery and overcome the defendants' assertion that he failed to exhaust his administrative remedies. Ramirez's submissions, the court added, had included clear explanations of the factual and legal bases for his arguments.

Ramirez asked for a lawyer a third and final time six months after the defendants had moved for summary judgment on the Eighth Amendment claim. But this request was premised on an asserted need for trial assistance, not for help in opposing the motion for summary judgment. The district court eventually declined again to recruit counsel after granting the defendants' motion for summary judgment. A trial was unnecessary, the court reasoned, because X-rays and examinations had ruled out a torn ligament and suggested only mild osteoarthritis and joint swelling. Dr. Fahim had followed advice from colleagues to defer a referral to an orthopedic specialist and first try strengthening exercises and an anti-inflammatory to alleviate the swelling and associated pain. Moreover, the court noted, Ramirez had not submitted evidence from which a jury could infer that cost-cutting pressure from Wexford had interfered with Dr. Fahim's exercise of medical judgment.

On appeal Ramirez raises just two procedural arguments. First he challenges the dismissal of his malpractice claim on the ground that a physician's certification is not a substantive requirement and should be excused for litigants who sue in federal, rather than state, court. We rejected this same argument in *Hahn v. Walsh*, 762 F.3d 617, 628–33 (7th Cir. 2014). *See also Hines v. Elkhart Gen. Hosp.*, 603 F.2d 646, 647 (7th Cir. 1979) (Indiana's requirement that a plaintiff obtain approval of medical review board to pursue malpractice claim applies to claims brought in federal court under diversity jurisdiction); *Feinstein v. Mass. Gen. Hosp.*, 643 F.2d 880, 885 & n.7 (1st Cir. 1981) (same

result for similar Massachusetts law); *DiAntonio v. Northampton-Accomack Mem'l Hosp.*, 628 F.2d 287, 290–91 (4th Cir. 1980) (same result for similar Virginia law). Under the framework provided by *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), and *Hanna v. Plummer*, 380 U.S. 460 (1965), the state's requirement of a physician's certification does not conflict with federal procedural rules, and thus a district court must dismiss a claim for medical malpractice arising under Illinois law if a physician's certification is not provided. *See Hahn*, 762 F.3d at 633. The district court allowed Ramirez ample time to procure the physician's certification, which he did not do. Indeed, even when Ramirez's claim of deliberate indifference reached summary judgment, Ramirez still had not secured any type of medical expert. The certification requirement is intended to reduce frivolous malpractice suits, *see Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000); *DeLuna v. St. Elizabeth's Hosp.*, 588 N.E.2d 1139, 1142 (Ill. 1992), and nothing we have seen in the appellate record even hints that Ramirez's suit had merit.

Ramirez's remaining contention is that the district court abused its discretion in not recruiting a lawyer to assist him. Ramirez rehashes the contentions he made in his several motions, and insists that a lawyer "would have made a difference" during the discovery phase. But the district court followed *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc), by considering Ramirez's literacy, communication skills, and litigation experience. Ramirez's lawsuit involved relatively simple questions about the treatment of his knee, and his well-written submissions throughout the proceedings show familiarity with the legal and factual issues. Despite his protestations, Ramirez successfully navigated discovery issues and appropriately responded to the defendants' motions. And although a pro se plaintiff's "inability to investigate crucial facts by virtue of his being a prisoner or of the remoteness of the prison from essential evidence" may favor recruiting counsel, *Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013); *see Schlemm v. Wall*, 784 F.3d 362, 366 (7th Cir. 2015), Ramirez does not identify any evidence that he was thwarted from obtaining. He possessed his medical records before he filed his complaint, and he concedes that he was able to send those records to outside doctors to request the medical certification. The medical records are not difficult to decipher, and we are given no reason to believe that a lawyer could have made better use of them than did Ramirez. *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 592–93 (7th Cir. 1996). Thus, we cannot conclude that the district court abused its discretion.

AFFIRMED.