2021 IL App (1st) 200576-U

THIRD DIVISION
May 26, 2021

No. 1-20-0576

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | Appeal from the |
| BELLIAPPA NANAIAH BACHINADANDA, | ) | Circuit Court of |
| | ) | Cook County |
| Petitioner-Appellee, | ) | |
| | ) | 17 D 3483 |
| and | ) | |
| | ) | Honorable |
| PONNAMMA NANAIAH BACHINADANDA, | ) | Timothy Murphy, |
| | ) | Judge Presiding |
| Respondent-Appellant. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed; motion to dismiss denied. Court has jurisdiction, as appellant filed notice of appeal within 30 days of denial of her post-trial motions. We find no error in any claim raised by appellant.

¶ 2                              BACKGROUND

¶ 3    The parties, Belliappa and Ponnamma Bachinadanda, are Indian citizens, who married while living in India. In 2009, Ponnamma gave birth to their first child while the couple was still in India.

¶ 4    Ponnamma works for an Indian business, Tata Consultancy Services, Ltd., that staffs technology companies around the world. In 2014, the family moved to the United States after she

was given an opportunity to work on a project in New Jersey. Because of her employment, Ponnamma was issued an "L1" Work Visa, while her husband Belliappa received an "L2" Visa as Ponnamma's dependent spouse.

¶ 5    After the New Jersey Project ended in 2016, Ponnamma was assigned to work for the Chicago Tribune. Because of the Tribune assignment, the parties moved to Illinois. While living here, Ponnamma gave birth to the couple's second child. The record shows that while Ponnamma was consistently employed, Belliappa had difficulty securing employment commensurate with his education.

¶ 6    The timeline in this case is not entirely clear, and the parties' statements of fact are quite argumentative. From what we can glean, the Tribune project was scheduled to finish at the end of 2017. That summer, Ponnamma was offered a position in Texas that would begin after the end of the Tribune project. Ponnamma fully intended to accept the Texas posting, and the family was preparing to move.

¶ 7    However, in October 2017, before the end of the Tribune Project, Belliappa filed for dissolution. According to Ponnamma, the dissolution prohibited her from taking the children to Texas. As such, she informed her employer that she could not take the Texas Project. She claims her employer then recalled her to India. In fact, about a month after the petition for dissolution was filed, Ponnamma filed an "Emergency Motion to Dismiss Petition for Dissolution of Marriage," arguing that she had initiated divorce proceedings through the Indian Consulate in Chicago and was being required to return to India to avoid termination of her employment. But Belliappa says she was not *required* to return to India and only wanted to return so she could litigate the divorce in a more favorable jurisdiction. Ultimately, Ponnamma did not return to India, was not assigned to another project in the States, and was placed on leave without pay.

¶ 8    In December 2017, the court denied Ponnamma's motion to dismiss. In the same order, the court appointed a Guardian Ad Litem (GAL) and ordered Ponnamma to "turn over the children's Passports to the possession of [the GAL] within 48 hours."

¶ 9    In May 2018, Ponnamma gave notice of her intent to permanently relocate the children to India. Belliappa objected, noting that this was her second attempt to relocate the children. It does not appear that a hearing was held on this notice. Ponnamma did not relocate the children.

¶ 10    In November 2018, Ponnamma again attempted to relocate by filing an "Emergency Petition for relocation to India with both kids." In it, she argued that she needed to return to India for work. Specifically, she alleged that she had been on "Leave without Pay" and was finding it difficult to survive without income. The court denied emergency relief but entered and continued the motion to allow Belliappa to respond. The court did not immediately rule on this petition, and the case proceeded to trial.

¶ 11    Just before trial, Belliappa filed a motion to quash subpoenas that Ponnamma issued to her employer; Kelly Combs, Ph.D (the psychological evaluator); and Beata Leja (an immigration attorney). Belliappa argued that the subpoenas were untimely, as they were issued after the close of discovery, and that the witnesses were not properly disclosed. The court agreed and quashed each of these subpoenas in September 2019.

¶ 12    We do not have an official transcript of the trial. However, the circuit court certified a Bystander Report prepared by Belliappa's counsel.

¶ 13    According to the Bystander Report, "[b]efore any witnesses were called, [Belliappa's] Counsel, [Ponnamma, *pro se*], and Judge Murphy discussed the initial Petition for Dissolution of Marriage and [Ponnamma's] Petition to Relocate and the Responses to each. Then, [Ponnamma] raised the issue of Psychological Evaluations that were conducted by Chicago Forensic School.

[Belliappa's] Counsel told Judge Murphy that she never received [the] report and that it would be prejudicial to allow these reports into evidence." The court told counsel to file a motion *in limine* on the issue (discussed below).

¶ 14    The testimony at trial primarily revolved around two topics. First, testimony about assets, income, debts, etc., typical of dissolution proceedings. But the questioning also heavily revolved around the parties' visa/work authorization statuses and Ponnamma's desire to relocate to India. The facts surrounding Belliappa's work authorization were heavily disputed. Because his visa was derivative of hers, he claimed that she was intentionally delaying his ability to work and forcing him to be a stay-at-home dad. On the other hand, Ponnamma testified there was only a short delay because her employer had to wait for *her* paperwork to clear before Belliappa could apply for his extension. Ponnamma also insisted that their immigration statuses were in peril and there was a looming threat of deportation.

¶ 15    Broadly speaking, the GAL testified that the parties were "taking good care of their kids." However, he expressed some concerns:

> "Mom wants to return to India. Divorce in India is very stigmatized, and dads aren't given parental rights. If mom goes to India with the kids, that would be bad for the kids' development. If dad goes with them, he might have no rights, which would not be in the best interest of the children. Mother does not think much of father, or his parenting. Does not want to agree to more time. She is not making efforts to protect his time. It's not clear if she's trying to cut him out, but I wouldn't trust her to decide his time."

¶ 16    It was thus the GAL's "recommendation" not to allow Ponnamma "to return to India with the children at this time." The GAL noted: "Also, the son is a US citizen, so he wouldn't be 'returning' to India."

¶ 17     As instructed, during the second day of testimony, Belliappa's counsel presented a written motion *in limine*. Counsel argued that she "did not receive the [psychological] reports" and thus requested "that the Psychological evaluation reports be barred from admission in trial." When asked for her response, Ponnamma stated: "I did not receive the Psychological Reports in email. Someone from Mr. Bender's office gave me my Psychological evaluation copies. I have included my report in the trial exhibits. We had many status dates with Judge Romanek to follow up on the status of this report. It was never updated to the court then that the reports were not received by Ms. Peters. It was told that [Belliappa] is attending the evaluations and is getting it done."

¶ 18     In ruling on the motion, the court stated: "Reports were not delivered to Petitioner nor to Respondent. The Rule is clear. Reports need to be issued within 21 days. Petitioner's Motion is granted to bar both psychological evaluations from being admitted into evidence and being referenced in testimony." The Bystander Report also reflects that: "Upon review of the Supreme Court Rule 215, Judge Murphy took consideration of the issue and entered an Order barring the admission of the psychological evaluations."

¶ 19     That written order specifically found that the parties entered into an Agreed Order in June 2018 "that provided for '*Psychological testing for both parents'* to be done by Chicago School Forensic Center" and that the testing was done in January 2019. The order continues: "That JILL PETERS, counsel for the [Belliappa] testified, and plead, that she did not receive a copy of either report and was unaware of the issuance thereof until September 20, 2019, some eleven (11) days before this trial commenced, and that on September 27, 2019, Judge Romanek stated that she did not have the Reports." Given these facts, the court concluded that the evaluations were barred pursuant to Illinois Supreme Court Rule 215.

¶ 20 At some point during trial (the Bystander Report is not clear), Ponnamma attempted to call Leja (the immigration attorney) to testify as a Rule 213(f)(3) witness. After questioning regarding the parties' immigration status, the Bystander Report reflects that "[Respondent inquired about witness. Argument ensued, and a written Order was entered.]" That is essentially all we know about the argument—that Belliappa's counsel objected to allowing Ponnamma to call Leja. The court agreed, entering a written order sustaining the objection and barring the witness.

¶ 21 On January 6, 2020, the court issued its judgment regarding relocation. In the relocation order, the court discussed each relocation factor. It then discussed the evidence admitted at trial relevant to those factors. The court made several findings regarding Ponnamma's need to return to India. The court determined that it "has not been presented with any evidence or documentation indicating that PONNAMMA's employment with [Tata Consultancy Services] has been terminated;" "any evidence or documentation indicating that [Tata] has terminated the Deputation Letter issued to PONNAMMA, nor that the Letter has expired thus necessitating her return to India forthwit [*sic*];" or "any evidence or documentation indicated that PONNAMMA's immigration status has been changed by U.S.C.I.S, that necessitates her return to India forthwit [*sic*]."

¶ 22 The court also found that "the overwhelming evidence shows that the proposed relocation of the children to India would have a substantial negative impact upon the children, as testified to by both the Guardian ad Litem and the forensic evaluator." The court thus concluded that "PONNAMMA has failed to establish that it is in the best interest of the children [] that they be removed to India and that their mother's Petition to do so should be granted." The court denied the motion to relocate without prejudice.

¶ 23    On February 5, 2020, 30 days after the relocation judgment, Ponnamma filed a "Motion for 'Extension of deadline for Reconsideration of Relocation Judgment' or 'a Retrial of Relocation Motion' as appropriate." In the motion, Ponnamma requested more time to file her motion to reconsider. However, she also requested a "retrial." Specifically, she argued that "considering the importance of Immigration law expert's testimony in deciding what is best for the kids, Respondent would request this court to consider a retrial so that full impact of not relocating to India on minor children can be known." She continued: "Respondent apologizes for not complying with Supreme court [*sic*] Rule 213 and requests another opportunity to comply. Ponnamma being a pro-se [*sic*] misunderstood supreme court rule 213 and prepared a written interrogatory to the witness."

¶ 24    Two days after Ponnamma's motion for extension/retrial, the court entered its Division and Allocation of Marital Estate order. Pertinent to this appeal, that order addressed—among other things—spousal support (maintenance) and GAL fees.

¶ 25    The court noted that "PONNAMMA historically earned well in excess of BELLIAPPA due to his Visa status." But, "[a]t the time of trial PONNAMMA had minimal income and no definite position of employment." That said, the court found no bad faith from either party regarding their employment and income situations. Overall, the court found that both parties were "similarly situated from a financial standpoint" and had "good prospects to acquire additional income and assets from their efforts once their immigration status is settled." The court specifically found "[t]hat both PONAMMA and BELLIAPPA are capable of secure and gainful employment and capable of their own support, and have each waived any claim of maintenance from the other." It then ordered that both parties were "barred from any claim of

maintenance [from the other] whether past, present or future and is capable of [their] own support without contribution from [the other]."

¶ 26     Based on these findings, the court also determined that each party "shall be equally responsible for the payment" of the GAL's fees; "i.e. BELLIAPPA is responsible for one-half of the total fees and costs incurred, and PONNAMMA is responsible for one-half of the fees and costs incurred."

¶ 27     On February 18, 2020, Ponnamma also moved to reconsider the division order "on the grounds that the evidence presented in trial did not support [her] claims about her employment and immigration status in USA."

¶ 28     On March 5, the court issued an order regarding both of Ponnamma's motions to reconsider. On the first motion, the motion for extension and/or retrial, the court found that "PONNAMMA did fail to either file her motion directed against the court's judgment of January 6, 2020 nor did she obtain an extension to do so within the thirty (30) day requirement of 735 ILCS 5/2-1203(a), and that consequently this court lacks jurisdiction to grant an extension at this time." The court denied the motion on the Allocation Judgment because it determined that Ponnama failed to adequately support her position and "that all of the claims in the instant Motion to Reconsider relate to PONNAMMA's immigration status and do not address any claims related directly to the division and allocation of the marital estate, nor does the Motion set forth a nexus between her immigration status and the property in the estate. That even if, arguendo, PONNAMMA's Motion did address property issues between the parties, she raises no new evidence, misapplication of the law relative to the property division, or any changes in the law."

¶ 29    On March 25, 2020, Ponnamma filed her Notice of Appeal, seeking to appeal the judgments of January 6, February 7, and March 5.

¶ 30                                ANALYSIS

¶ 31    Ponnamma raises six points of error the judge allegedly committed: barring the immigration expert, Leja; excluding the psychological evaluations; denying the motion to relocate to India; finding that she was not required to travel to India for work; requiring her to pay half the GAL fees; and not ordering Belliappa "to contribute to [her] living expenses in US since 2017 incurred due to this lawsuit."

¶ 32    However, before discussing the merits, Belliappa filed a motion to dismiss, in part, for lack of jurisdiction—which we took with the case.

¶ 33                             I. Motion to Dismiss

¶ 34    Belliappa says that we lack jurisdiction to review the January 6 relocation order and related issues, because Ponnamma failed to file her notice of appeal within 30 days of the order and her "motion for extension of time" was not a proper post-trial motion that extended the time to file this appeal.

¶ 35    There is "no question" that a relocation order qualifies as a "final judgment" for the purposes of filing a notice of appeal. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 30; see Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016). Because the judgment qualifies as an appealable order pursuant to Rule 304(b)(6), "the time in which a notice of appeal may be filed from a judgment or order appealable under this Rule 304(b) shall be as provided in Rule 303." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). That is 30 days after judgment or, if a timely "posttrial motion directed against the judgment is filed," within 30 days after the disposition of that motion. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 36 So the question is whether Ponnamma's "Motion for 'Extension of deadline for Reconsideration of Relocation Judgment' or 'a Retrial of Relocation Motion' as appropriate" was "directed against the judgment." When determining whether a motion is a "proper" post-trial motion, we look to the relevant provision of the Code of Civil Procedure. See *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24, 28 (2002).

¶ 37 In a case tried to the bench, the relevant provision states that, "in all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a *retrial*, or modification of the judgment or to vacate the judgment or for other relief." (Emphasis added.) 735 ILCS 5/2-1203(a) (West 2018); see *In re Marriage of Singel*, 373 Ill. App. 3d 554, 556 (2007) ("a proper postjudgment motion under section 2-1203(a) must request a rehearing, retrial, modification or vacatur of the judgment, or similar type of relief against the judgment.") When determining whether a motion is a proper post-trial motion, we look to the substance of the motion, not its title. *R & G, Inc. v. Midwest Region Foundation for Fair Contracting, Inc.*, 351 Ill. App. 3d 318, 323 (2004).

¶ 38 Ponnamma's motion, though styled in part as a motion for extension, was a post-trial motion directed against the judgment. Her alternative requested relief was a "retrial," which is sufficient in itself to qualify. 735 ILCS 5/2-1203(a) (West 2018). And she explained, albeit not in great depth, that a retrial was warranted to allow her immigration expert, Leja, to testify so that the "full impact of not relocating to India on the minor children can be known." That is enough. See *Kingbrook*, 202 Ill. 2d at 33 (finding that single line motion for reconsideration qualified as post-trial motion under section 2-1203(a) and reversing appellate court order dismissing for lack of jurisdiction).

¶ 39     So Ponnamma's motion qualifies as a post-trial motion directed against the judgment. Since she filed her notice of appeal within 30 days after the court denied this post-trial motion, this court has jurisdiction to review the issue. The motion to dismiss is denied.

¶ 40                                  II. Relocation Issues

¶ 41     Before we discuss the merits of the relocation order, there are a few issues with Ponnamma's brief. Though we have jurisdiction, we would note that Ponnamma does not discuss the standard for relocation, the statutory relocation factors, or our standard of review. Nor does she explain how her notion of the correct facts ties back to relief in her favor; she states her view of the facts without any argument for why those facts warrant relief or any supporting case law.

¶ 42     It is tempting to deem her relocation arguments forfeited for that reason. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on."); see *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) (even argument developed "beyond mere list or vague allegations may be insufficient if it does not include citations to authority."); *U.S. Bank Trust National Association v. Junior*, 2016 IL App (1st) 152109, ¶ 19 ("It is a rudimentary rule of appellate practice that an appellant may not make a point merely by stating it without presenting any argument in support." (Internal quotation marks omitted.)).

¶ 43     But we will consider her arguments, in part because Ponnamma, *pro se*, has extensively laid out the facts with citations to the record, and we are able to understand her argument without difficulty.

¶ 44     Ponnamma claims that the trial court erred in "concluding that I can report back to work in [Tata Consultancy] US and end my Leave without pay without traveling to India." She claims that the trial court misunderstood her documentary evidence, and that the deputation from her

Indian employer Tata had expired, giving her the difficult choice of returning to India to work there (possibly without her children) versus staying in America, losing her job, and being in violation of immigration laws, subject to deportation.

¶ 45    As Belliappa notes, it was not that the trial court failed to understand Ponnamma's argument so much as it did not find the claim credible. The court agreed with Belliappa's argument that the deputation letter from Tata did not have an expiration date, that in fact Tata had attempted to find other employment for Ponnamma in Chicago, and that Ponnamma had even turned down consideration for one job in Chicago due to "personal constraints." The court did not believe that Ponnamma was forced to return to India. We cannot say from this record that this finding was against the manifest weight of the evidence.

¶ 46    And while that issue was undoubtedly important to the trial court's consideration, it was by no means the only or predominant consideration. Of particular importance was the GAL's testimony that relocation to India was not in the best interests of the children and the concern over Belliappa's parenting rights (which are far less in India than in America) should they relocate, leading to a potentially strained relationship between children and father. The court adopted that opinion, finding that relocation would not be in the best interests of the children.

¶ 47    The trial court meticulously reviewed and considered each of the statutory factors regarding relocation. Though Ponnamma certainly put forth evidence in her favor, we have found nothing that convinces us that the trial court's decision was against the manifest weight of the evidence or constitutes a manifest injustice. See *Fatkin*, 2019 IL 123602, ¶ 32 (" '[a] trial court's determination of what is in the best interest of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred.' " (quoting *In re Marriage of Eckert*, 199 Ill. 2d 316, 326 (1988))).

¶ 48                    III. Barring Immigration Expert Leja

¶ 49    Ponnamma also argues that the court erred when it barred her immigration law expert, Leja, from testifying. The Bystander Report in this case does not shed any light on the specific argument around this issue. All we know is that the order states that Leja was excluded for "lack of notice and failure to comply with the requirements of Illinois Supreme Court Rule 213."

¶ 50    With respect to a controlled expert witness, Rule 213 requires a party to disclose: "(i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case." Ill. S. Ct. R. 213(f)(3) (eff. Jan 1, 2018). The trial court's determinations about disclosure will not be reversed absent an abuse of discretion. *Morrisroe v. Pantano*, 2016 IL App (1st) 143605, ¶ 38. An abuse of discretion occurs if " 'no reasonable person would take the view adopted by the trial court.' " *Id.* (quoting *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 93).

¶ 51    Here, there is simply no basis for finding an abuse of discretion. For one, Ponnamma admits she didn't comply with the disclosure requirements. She acknowledges that, as a *pro se* litigant, she "misunderstood supreme court rule 213 and prepared a written interrogatory for the witness. The interrogatory was also filed on time and has all the questions listed in it. Agreed that it is not the same as conclusion of the expert witness, but it still demonstrates that Ponnamma was being transparent and did attempt to follow the rules."

¶ 52    In her brief, Ponnamma tries to cobble together her 213(f)(3) disclosures from information "in the subpoena to Beata Leaja [*sic*]" and what she believes Belliappa should have been aware of based on her arguments in the case. But this is not what Rule 213(f)(3) requires. Ponnamma was obligated to make her expert disclosures to Belliappa, and nothing in the record,

or her argument, shows that she did. Rule 213 disclosures are not suggestions; they "are mandatory and subject to strict compliance by the parties." *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004). And while we are sympathetic to Ponnamma's misunderstanding, it does not excuse her failures. See *U.S. Bank Trust National Association v. Junior,* 2016 IL App (1st) 152109, ¶ 16 (*pro se* litigants are not entitled to more lenient treatment than attorneys).

¶ 53    We cannot say that no reasonable person would adopt the court's view here. So we cannot find that the court abused its discretion by barring Leja from testifying.

¶ 54                    IV. Motion in Limine: Psychological Evaluations

¶ 55    Next, Ponnamma contends the court erred by granting the motion *in limine* to exclude the parties' psychological evaluations (both Beliappa and Ponnamma submitted to those evaluations). According to the court's written order, it specifically found that the reports had not been timely disclosed.

¶ 56    Illinois Supreme Court Rule 215(c) (eff. Jan. 1, 2018) governs physical and mental exams and requires that "[w]ithin 21 days after the completion of the examination, the examiner shall prepare and mail or deliver to the attorneys for the party requesting the examination and the party examined duplicate originals of a written report of the examination, setting out the examiner's findings, results of all tests made, and the examiner's diagnosis and conclusions." If this doesn't happen, "the examiner's testimony, the examiner's findings, X-ray films, nor the results of any tests the examiner has made may be received in evidence except at the instance of the party examined or who produced the person examined." *Id*. Rule 215's exclusion remedy is mandatory and *obligates* a court to exclude a report that has not been timely disclosed. *Batson v. Township Village Associates, LP*, 2019 IL App (5th) 170403, ¶¶ 18-19, 29.

¶ 57    Ponnamma does not claim that the reports were ever sent to Belliappa or his counsel. Instead, she argues they should have known that they existed and blames the GAL for not telling the court that the reports had been completed. Based on the record, it appears that the evaluations were completed on January 8, 2019. That same day, the evaluator—Chicago School Forensic Center—sent a fax of the report to Judge Romanek and Michael Bender (the GAL). But there is *nothing* in that fax, or the record, which shows that it was sent to Belliappa's counsel.

¶ 58    In fact, Ponnamma's argument supports the conclusion that Belliappa's counsel was not aware of the evaluation. She states, "On Jan 10, 2019, JILL PETERS, counsel for the Petitioner updated the court that her client is still getting the evaluations done, which was in correct [*sic*] since as per the evidence * * *, the report was faxed on 1/8/2019." Ponnamma would have us believe that counsel made a mistake (or was dishonest) about still waiting for the evaluations. But an equally plausible inference would be that she didn't know. And that makes sense, because as just stated, the January 8 fax did not include Belliappa's counsel as a recipient.

¶ 59    In any event, the court explicitly found it "clear that the Reports were never delivered to counsel for [Belliappa in] a timely manner." We can only reverse findings of fact if they are against the manifest weight of the evidence. *In re Tiffany M.*, 353 Ill. App. 3d 883, 890 (2004). The record clearly supports the conclusion that Belliappa's counsel did not receive the reports on January 8. Nor is there any indication that she was aware of them until just before trial.

¶ 60    As the court found that the reports were not "timely" disclosed, Rule 215 obligated it to exclude them from evidence. We find no error.

¶ 61                                    V. GAL Fees

¶ 62    Ponnamma next challenges the court's decision to equally split the GAL fees. An order approving fees for a GAL "shall require payment by either or both parents, by any other party or

source, or from the marital estate or the child's separate estate." 750 ILCS 5/506(b) (West 2020)

In determining the split of fees, the trial court should consider the total circumstances of both

parents, including their finances and ability to pay. *In re Marriage of Patel and Sines-Patel*, 2013

IL App (1st) 1125471, ¶ 147. We may also consider whether the fees were the result of the

actions of one or both of the parties. *Id*. ¶ 148. We review the court's fee distribution for an

abuse of discretion. *McClelland v. McClelland*, 231 Ill. App. 3d 214, 228 (1992).

¶ 63    Here, Ponnamma spends much of her argument blaming Belliappa for the divorce

proceedings. She contends that his decision to file for divorce in Illinois, as opposed to India,

should obligate him to pay all the GAL fees. However, the circuit court specifically found that

neither party had acted in bad faith regarding their decision to stay in Illinois or Ponnamma's

desire to move to India. While the actions of the parties *may* be a basis for a distribution of fees,

there is no evidence here that would overcome the court's finding of good faith.

¶ 64    The court also specifically determined that both parties were similarly situated

financially, and their prospects for income were bright, once the immigration issues are resolved.

Given these findings, it seems entirely reasonable for the court to have split the fees equally,

given that they were equally financially situated. We find no abuse of discretion.

¶ 65                                    VI. Support order

¶ 66    Finally, Ponnamma argues that the court erred by not requiring Belliappa to pay her

living expenses incurred due to the lawsuit. Like the GAL fees, her argument primarily focuses

on blaming Belliappa for her financial hardship—primarily the loss of the Texas Project.

Specifically, she asks us "to see through the evidence [and] find the malicious intent of the

Petitioner [and] order him to contribute to my living expenses in US to an amount that court

deems appropriate."

¶ 67    While it is true that this dissolution proceeding was likely the reason she couldn't accept that position, the court did not find a basis for maintenance or contribution. As an initial point, it found that both parties "waived" their right to maintenance and were "barred" from requesting it. It's unclear *how* the parties waived maintenance—Belliappa's brief claims it's because neither party requested it, but the court order does not say (and we have no transcript of proceedings, just a bystander's report). In any event, our courts have clearly recognized that maintenance can be waived. See *In re Marriage of Schneider*, 214 Ill. 3d 152, 172-73 (finding that court did not abuse discretion for failing to *sua sponte* reconsider waiver of maintenance); *Berger v. Berger*, 357 Ill. App. 651, 657-58 (2005) (finding antenuptial waiver contract enforceable where there was adequate consideration for waiver). Ponnamma does not address the waiver finding, and we see no reason to disturb it.

¶ 68    But, again, the court found that the parties were in similar financial positions and were entitled to an equal share of the marital estate. Because their situations were relatively equal, the court did not believe that the parties required maintenance. It is true that the parties were both underemployed at the time of this proceeding. Yet, the court acknowledged their education and employment potential. It is clear that the court had high hopes that the parties would be able to get back on track and resume earning to their potential once their immigration statuses were settled.

¶ 69    As with the other issues, the court went through the parties' financial positions and acknowledged their current hardship before finding that neither was entitled to maintenance. As a general rule, a court's determination on maintenance is presumed to be correct. *In re Marriage of Nord*, 402 Ill. App. 3d 288, 292 (2010). We will only reverse it where the party challenging

the award can show an abuse of discretion. *Id*. Like her other arguments, Ponnamma has not met that burden.

¶ 70                                              CONCLUSION

¶ 71     It is clear that Ponnamma worked very hard in a *pro se* capacity to draft her appellate briefs, and the Court appreciates her effort. It is likewise clear that this case is an emotional one, like most involving children and dissolutions of marriage. Our review indicates that the trial court carefully considered her arguments and entered detailed findings. Under the deferential standards of review we employ, we can find no error in the court's rulings. We thus affirm the judgments under review.

¶ 72     Motion to dismiss denied; judgment affirmed.